# EXHIBIT A

Christopher A. Villasenor, Esq. (SBN 147118)
**LAW OFFICES OF CHRISTOPHER A. VILLASENOR**
**A PROFESSIONAL CORPORATION**
12396 World Trade Drive, Suite 211
San Diego, CA 92128
Chris@sdlawfirm.net
Tel. 858-707-7771
Fax. 858-707-7773

Attorney for Plaintiff, JULIA SZLAKOWSKI

## SUPERIOR COURT OF CALIFORNIA
## COUNTY OF SAN DIEGO

| | |
|---|---|
| JULIA SZLAKOWSKI, an individual, | CASE NO. |
| Plaintiff, | **COMPLAINT** |
| v. | 1. Wrongful Termination in Violation of Public Policy |
| EIV CAPITAL, LLC, a Delaware corporation; DAVID FINAN, an individual; JENNIFER GOTTSCHALK, an individual; and DOES 1 to 20, inclusive, | 2. Intentional Interference with Prospective Economic Advantage |
| | 3. Discrimination Based on Disability in Violation of FEHA (Cal. Gov. Code §§ 12900 et seq.) |
| Defendants. | 4. Negligent Supervision and Retention |
| | 5. Intentional Infliction of Emotional Distress |
| | 6. Negligent Infliction of Emotional Distress |
| | 7. Breach of Express Oral Contract Not to Terminate Employment Without Good Cause |
| | 8. Breach of Implied-in-Fact Contract Not to Terminate Employment Without Good Cause |
| | 9. Defamation |
| | **DEMAND FOR JURY TRIAL** |
| | **UNLIMITED CIVIL CASE, EXCEEDS $25,000** |

Plaintiff, Julia Szlakowski, alleges, on the basis of personal knowledge and/or information and belief:

////

---

**COMPLAINT AND DEMAND FOR JURY TRIAL**

## SUMMARY

This is an action by plaintiff, Julia Szlakowski ("Plaintiff" or "Szlakowski"), whose employment with defendant EIV Capital, LLC ("defendant" or "EIV") was wrongfully terminated. Plaintiff brings this action against defendants for economic, non-economic, compensatory, and punitive damages, pursuant to Civil Code section 3294, pre-judgment interest pursuant to Code of Civil Procedure section 3291, and costs and reasonable attorneys' fees pursuant to Government Code section 12965(b), and Code of Civil Procedure section 1021.5.

## PARTIES

1. Plaintiff Szlakowski is, and at all times mentioned in this Complaint was, a resident of the County of San Diego, California and performed fundraising and marketing services for EIV in the County of San Diego, State of California in this Court's jurisdiction.

2. EIV is, and at all times mentioned in this Complaint was, a Delaware limited liability company with its principal place of business at 910 Louisiana Street, Suite 4010, Houston, Texas 77002. At all relevant times in this Complaint, EIV hired Plaintiff to perform fundraising and other marketing services and paid Plaintiff's wages in the County of San Diego, State of California in this Court's jurisdiction.

3. David Finan ("defendant" or "Mr. Finan") is, and at all times mentioned in this Complaint was, a managing partner and officer of EIV and Plaintiff's lead supervisor. Defendant Finan is, and at all times mentioned in this Complaint was, a resident of Houston, Texas.

4. Jennifer Gottschalk ("defendant" or "Gottschalk") is, and at all times mentioned in this Complaint was, a partner and officer of EIV and Plaintiff's direct supervisor. Defendant Gottschalk is, and at all times mentioned in this Complaint was, a resident of Houston, Texas.

5. Defendants Does 1 to 20, inclusive, are sued under fictitious names pursuant to Code of Civil Procedure section 474. Plaintiff is informed and believes, and on that basis alleges, that each of the defendants sued under fictitious names is in some manner responsible for the wrongs and damages

alleged below, in so acting was functioning as the agent, servant, partner, and employee of the co-defendants, and in taking the actions mentioned below was acting within the course and scope of his or her authority as such agent, servant, partner, and employee, with the permission and consent of the co-defendants. The named defendants and Doe defendants are sometimes hereafter referred to, collectively and/or individually, as "defendants."

6. All defendants compelled, coerced, aided, and/or abetted the discrimination, retaliation, and harassment alleged in this Complaint. All defendants were responsible for the events and damages alleged herein, including on the following bases: (a) defendants committed the acts alleged; (b) at all relevant times, one or more of the defendants was the agent or employee, and/or acted under the control or supervision, of one or more of the remaining defendants and, in committing the acts alleged, acted within the course and scope of such agency and employment and/or is or are otherwise liable for Plaintiff's damages; (c) at all relevant times, there existed a unity of ownership and interest between or among two or more of the defendants such that any individuality and separateness between or among those defendants has ceased, and defendants are the alter egos of one another. Defendants exercised domination and control over one another to such an extent that any individuality or separateness of defendants does not, and at all times herein mentioned did not, exist. Adherence to the fiction of the separate existence of defendants would permit abuse of the corporate privilege and would sanction fraud and promote injustice. All actions of all defendants were taken by employees, supervisors, executives, officers, and directors during employment with all defendants, were taken on behalf of all defendants, and were engaged in, authorized, ratified, and approved of by all other defendants.

7. EIV directly employed Plaintiff, as alleged herein as defined in the Fair Employment and Housing Act ("FEHA") at Government Code section 12926(d).

8. In addition, Entity Defendants compelled, coerced, aided, and abetted the discrimination, which is prohibited under California Government Code section 12940(i).

9. Finally, at all relevant times mentioned herein, all defendants acted as agents of all other defendants in committing the acts alleged herein.

////

---

COMPLAINT AND DEMAND FOR JURY TRIAL

## VENUE

10. The actions at issue in this case occurred in the State of California, in the County of San Diego. Under the California Fair Employment and Housing Act, this case can alternatively, at Plaintiff's choice, be filed: [I]n a county in which the department has an office, *in a county in which unlawful practices are alleged to have been committed*, in the county in which records relevant to the alleged unlawful practices are maintained and administered, in the county in which the person claiming to be aggrieved would have worked or would have had access to public accommodation, but for the alleged unlawful practices, in the county of the defendant's residence or principal office. . . (Italics and bolding added) (California Government Code § 12965(b).)

11. Here, the Plaintiff worked primarily in California in the County of San Diego. The location where Plaintiff worked was located in San Diego, California. The majority of the unlawful actions on the part of the defendants occurred while Plaintiff worked in the County of San Diego.

12. "[I]n the absence of an affirmative showing to the contrary, the presumption is that the county in which the title of the actions shows that the case is brought is, prima facie, the proper county for the commencement and trial of the action." (*Mission Imports, Inc. v. Superior Court* (1982) 31 Cal.3d 921, 928.) The FEHA venue statute – section 12965(b) – thus affords a wide choice of venue to persons who bring actions under FEHA. (*Brown v. Superior Court* (1984) 37 Cal.3d 477, 486.) "[T]he special provisions of the FEHA venue statute control in cases involving FEHA claims joined with non-FEHA claims arising from the same facts." (*Id.* at 487.)

## FACTS COMMON TO ALL CAUSES OF ACTION

### *PLAINTIFF'S HIRING:*

13. Plaintiff is a female, age 43. She has worked in finance since 2010. She originally worked for EIV through a separate company, Champlain Advisors, LLC, ("Champlain") as a licensed registered representative in 2014, 2016-2017. During this time, Plaintiff worked on EIV Capital funds II and III as a placement agent. As a result of Plaintiff's great results, Mr. Finan insisted to serve as a reference to Plaintiff and demanded that he would be the first one to be called on her list of references. On or about

December 1, 2018, Plaintiff contacted Mr. Finan to request a reference, and Mr. Finan immediately offered Plaintiff employment at EIV. In December 2018, she was hired by EIV as an employee and Director of Communications and Investor Relations.

14. Plaintiff's primary role at EIV was to raise institutional capital for their private equity funds from institutional investors. Although EIV is based out of Houston, Texas, Plaintiff primarily worked from her home office in San Diego, California. Plaintiff's annual salary started at $300,000, and she was promised a guaranteed 3% increase annually. In addition, she was paid a bonus of $600,000 per fund. As further alleged in this complaint, Plaintiff was provided notice of termination on or about February 11, 2021, however, she was paid wages through February 15, 2021.

15. Prior to working for EIV, in December 2016, Plaintiff was hired by AMP Capital ("AMP"), an established company headquartered in Sydney, Australia, as head of North America for their entire suite of private equity fund products. While employed at AMP, Plaintiff was the victim of sexual harassment, which spanned over approximately six months. She filed a complaint for sexual harassment against AMP, and an investigation found in her favor. Plaintiff resigned from AMP following a mediation and settlement in March 2018.

16. On or about June 2020, an anonymous third party tipped off the press about Plaintiff's credible complaint made against AMP. On or about July 1, 2020, the story was picked up by the international press and widely disseminated in the media.

17. On or about July 2020, Plaintiff discovered that AMP through the use of a crisis PR firm, created a false narrative in the public media about the case and Plaintiff in general to attempt to defend their own interests.

18. On or about August 2020, upon the advice of counsel and consultants, Plaintiff decided to come forward publicly to protect her personal and professional reputation and rebut AMP's false claims. Her story sparked the "Me Too" movement in corporate Australia concerning sexual harassment against women. In addition, she instantaneously became the face of the movement in Australia.

19. AMP was subsequently destroyed by the negative publicity regarding Plaintiff's case, and their funds were decimated.

**COMPLAINT AND DEMAND FOR JURY TRIAL**

### *PLAINTIFF'S JOB PERFORMANCE:*

20. Both prior to and after commencing employment with EIV, Plaintiff's job performance was stellar. After being hired at EIV in December 2018 as the sole internal fundraiser, she raised over $700,000,000 in four months for EIV Capital Fund IV and EIV Capital Fund IV Co-Invest Vehicle. She affected three closes in four months, the last of which was during COVID-19 and post energy price collapse where oil was negative $40 a barrel in April 2020. There is a general agreement by institutional investors that EIV Capital Fund IV was the most successful energy fundraise in North America and globally of 2020. Notably, Plaintiff surpassed targets on both fundraises by January 2020.

21. Even in the midst of the COVID-19 pandemic and decreasing oil prices, Plaintiff was able to surpass the targets for both EIV Capital funds. The EIV partnership and great investment team were thrilled with the results and gave her a glowing review in January 2020. Overall, EIV's relationship with Plaintiff was revered and protected up through the time the AMP story and her direct involvement in the "Me Too" movement was disclosed. Further, Plaintiff's work performance evaluations were excellent or exceeded all expectations during this time.

### *PLAINTIFF'S PROTECTED STATUS AND ACTIVITY:*

22. Plaintiff made protected complaints and communications to the public regarding AMP regarding sexual harassment and engaged in other protected activities while employed by EIV.

23. In approximately July 2020, upon the advice of her attorneys and consultants, Plaintiff decided to go public with her side of the facts on the AMP story. Plaintiff scheduled separate conference calls and informed EIV's principal partners and officers: David Finan, Jennifer Gottschalk, Patti Melcher Greg Davis, and Jill Stamets of the recent AMP media coverage and her intent to go public to defend her personal and professional interests. During these meetings, Plaintiff volunteered to share all materials documenting the harassment at AMP and shared access to a Google drive wherein she kept a log of most pertinent media coverage of the case. Initially, the partners and agents were interested in reviewing the documentation, however, they changed their minds upon advice of counsel. The partners and agent did review the media coverage through various mediums. In addition, subsequently, she

informed EIV partners that she suffered from PTSD following the sexual harassment at AMP. Further, she informed EIV that she lost approximately 15 pounds as a result of her major stress.

24. Immediately following the aforementioned teleconferences with EIV, two male managing partners at EIV, strongly advised Plaintiff not to go public about the AMP scandal. They stated "you need to think about your future at EIV" and Mr. Finan stated you are getting horrible legal advice.

25. Plaintiff decided to go public with her side of the story to protect her personal and professional reputation. Private equity is a notoriously dominated male industry. When Plaintiff went public, within seven days, the biggest institutional investors forced the resignations of the board at AMP limited, the parent company at AMP Capital. This ignited corporate Australia's "Me Too" movement. The whole story was front page news in Australia and numerous news outlets throughout the world.

26. Immediately following the AMP publication and Plaintiff's public statement, she was immediately mistreated, harassed, discriminated and ridiculed by partners and officers at EIV despite her work performance. Certain EIV staff felt sorry for Plaintiff and her mistreatment and commented on it during personal meetings.

27. Immediately upon learning that Plaintiff intended to go public, Mr. Finan became irate and proceeded to harass, humiliate, and dehumanize Plaintiff during meetings, in person and over the telephone immediately and throughout the remainder of EIV's employment. He verbally abused Plaintiff creating a hostile work environment as a result of participating in the AMP matter and "Me Too" movement.

28. Following Plaintiff's complaints to Ms. Gottschalk regarding Mr. Finan's abuse and retaliation, Ms. Gottschalk stepped in as Plaintiff's supervisor. Subsequently Ms. Gottschalk started instituting unreasonable demands and mirrored Mr. Finan's behavior, which continued to foster a hostile work environment. These actions were designed to force Plaintiff to quit versus terminating her.

29. In approximately November 2020, Defendants provided Plaintiff with a 100-day work plan. Plaintiff successfully completed and performed under the 100-day plan, which they were supposed

to review in February, 2021. Following the AMP publication and Plaintiff's public statements, defendants fabricated poor performance.

30. In approximately Fall 2020, EIV hired Plaintiff's former boss, Terry Crikelair, a male, to take over the fundraise. Mr. Crikelair was going to be paid on all capital raised and on capital raised by Plaintiff. Plaintiff protested vocally, and co-founding partner, Patti Melcher in response, Mr. Crikelair, is a necessary evil and Mr. Finan is dead set in getting to the hard caps. In addition, EIV owes Crikelair and Champlain a favor. Defendants discriminated against Plaintiff in retaliation with her decision to discuss the "Me Too" movement. This caused Plaintiff to lose significant salary and wages.

31. Defendants' actions maliciously aggravated her PTSD. As stated above, she lost approximately 15 pounds between in December 2020. When Plaintiff asked for accommodations to help calm her stress and anxiety, EIV initially agreed that she should not work weekends. However, EIV failed to act upon these accommodations to help relieve Plaintiff's symptoms of PTSD.

32. On February 11, 2021, EIV partners Patti Melcher and Ms. Gottschalk scheduled a Zoom meeting to discuss Plaintiff's 100 Day plan. Instead, Plaintiff was ambushed and informed that they were going to discuss her separation from EIV. During this short Zoom meeting, Ms. Melcher and Ms. Gottschalk only cited a "difference of opinion," thanked Plaintiff for her good work, and strongly suggested that she sign a release of all claims and think about her future job prospects. No definitive reason was provided for her termination. She was paid her salary through February 15, 2021; however, she was not paid all of her costs.

33. Subsequently, Plaintiff was provided a separation and release agreement. Plaintiff refused to sign the separation and release agreement.

***POST TERMINATION INTERFERENCE AND DISCRIMINATION:***

34. Following her termination from EIV and continuing through February 2023, Plaintiff has been blacklisted from the private equity market and cannot obtain employment as a result of EIV's and their principals' unlawful actions.

35. Plaintiff attempted to obtain letters of recommendation from EIV staff. Such staff responded that they are prohibited from providing any letters of recommendation before she signs a release of liability, which constitutes unlawful and discriminatory conduct.

36. Plaintiff has had two informal offers of employment from separate companies in the private equity market, the most recent was in the Summer of 2022. In addition, she was part of one robust interview process that lasted for months. After the prospective employers contacted EIV, Plaintiff was rejected for employment. Defendants' actions interfered with Plaintiff's ability to secure a job.

37. Plaintiff has sent out her resume and attempted to contact dozens of employers for jobs since February 2021. Based upon the actions and interference of EIV and its principals, Plaintiff has been unable to secure employment in the private equity market.

38. *Economic damages:* As a consequence of defendants' conduct, plaintiff has suffered and will suffer harm, including lost past and future income and employment benefits, damage to her career, and lost wages, overtime, unpaid expenses, and penalties, as well as interest on unpaid wages at the legal rate from and after each payday on which those wages should have been paid, in a sum to be proven at trial.

39. *Non-economic damages:* As a consequence of defendants' conduct, plaintiff has suffered and will suffer psychological and emotional distress, humiliation, and mental and physical pain and anguish, in a sum to be proven at trial.

40. *Punitive damages:* Defendants' conduct constitutes oppression, fraud, and/or malice under California Civil Code section 3294 and, thus, entitles plaintiff to an award of exemplary and/or punitive damages.

a. *Malice:* Defendants' conduct was committed with malice within the meaning of California Civil Code section 3294, including that (a) defendants acted with intent to cause injury to plaintiff and/or acted with reckless disregard for plaintiff, including by terminating plaintiff's employment and/or taking other adverse job actions against plaintiff because of her good faith complaints, and/or (b) defendants' conduct was despicable and committed in willful and conscious disregard of plaintiff's rights.

**COMPLAINT AND DEMAND FOR JURY TRIAL**

b. *Oppression:* In addition, and/or alternatively, defendants' conduct was committed with oppression within the meaning of California Civil Code section 3294, including that defendants' actions against plaintiff because of good faith complaints were "despicable" and subjected plaintiff to cruel and unjust hardship, in knowing disregard of plaintiff's rights to a work place free of discrimination, harassment, retaliation, and wrongful employment termination.

c. *Fraud:* In addition, and/or alternatively, Defendants' conduct, as alleged, was fraudulent within the meaning of California Civil Code section 3294, including that defendants asserted false (pretextual) grounds for terminating plaintiff's employment and/or other adverse job actions, thereby to cause Plaintiff hardship and deprive her of legal rights.

41. *Attorneys' fees:* Plaintiff has incurred and continues to incur legal expenses and attorneys' fees.

42. *Exhaustion of administrative remedies:* Prior to filing this action, on February 10, 2023, Plaintiff exhausted her administrative remedies by filing a timely administrative complaint with the Department of Fair Employment and Housing ("DFEH") pertaining to Defendants: EIV Capital, LLC, David Finan and Jennifer Gottschalk. A DFEH right-to-sue letter was requested and received the same day. Plaintiff herein with this Complaint serves EIV Capital, LLC with her Complaint and Right-to-sue notice. Plaintiff now timely files this action.

## FIRST CAUSE OF ACTION

### Wrongful Termination of Employment in Violation of Public Policy

### (*Tameny v. Atlantic Richfield Co.* (1980) 27 Cal.3d 167)

### Against Defendants; and Does 1 to 20, Inclusive

43. The allegations set forth in preceding paragraphs are re-alleged and incorporated herein by reference.

44. Defendants terminated Plaintiff's employment in violation of various fundamental public policies underlying both state and federal laws. Specifically, Plaintiff's employment was terminated for substantial motivating reasons, including her protected status as disabled (based upon her PTSD) and a female. The public policy of promoting political discourse and encouraging expression without the fear

of retaliation is a cornerstone of our democracy, and Plaintiff suffered adverse employment action for exercising her First Amendment right by engaging in political activities outside of work, participating in the "Me Too" movement, and whistleblowing against her former employer which Defendants have no relation to. Whistleblowing is an important public policy to encourage reporting of wrongdoing and ensuring prompt investigation, which defendants actively chilled when instructing and retaliating against Plaintiff for engaging in the protected activity of whistleblowing against her former employer. These actions were in violation of, but not limited to, the FEHA, the California Constitution, Government Code section 12900, *et seq.*, and California Labor Code section 1102.5.

45. As a proximate result of defendants' wrongful termination of Plaintiff's employment in violation of fundamental public policies, Plaintiff has suffered and continues to suffer humiliation, emotional distress, and mental and physical pain and anguish, all to her damage in a sum according to proof.

46. Defendants' wrongful termination of her employment was a substantial factor in causing Plaintiff's harm, Plaintiff has suffered general and special damages in sums according to proof.

47. Defendants' wrongful termination of Plaintiff's employment was done intentionally, in a malicious, fraudulent, despicable, and/or oppressive manner, and this entitles Plaintiff to punitive damages.

48. Plaintiff has incurred and continues to incur legal expenses and attorneys' fees. Pursuant to Code of Civil Procedure sections 1021.5 and 1032, *et seq.*, Plaintiff is entitled to recover reasonable attorneys' fees and costs in an amount according to proof.

## SECOND CAUSE OF ACTION

**Intentional Interference with Prospective Economic Advantage**

*(Settimo Associates v. Environ Systems, Inc.* (1993) 14 Cal.App.4th 842)

**Against Defendants; and Does 1 to 20, Inclusive**

49. The allegations set forth in preceding paragraphs are re-alleged and incorporated herein by reference.

50. Plaintiff is informed and believe that she received numerous offers of employment from prospective employers after she was wrongfully terminated at EIV. These offers of employment, would result in an economic benefit to the Plaintiff.

51. Plaintiff is informed and believes, and on that basis alleges, that Defendants knew of the economic relationships described herein that existed and exist between Plaintiff and its prospective employers. Plaintiff is further informed and believes, and on that basis alleges, that Defendants knowingly, fraudulently, intentionally and tortiously interfered with Plaintiff's economic relationships with these individuals or entities as described herein by raising issues related to the "Me Too" movement, making false comments about her work, and discriminating against her. Additionally, Plaintiff has had three verbal offers of employment get rescinded after contacting Defendants.

52. Plaintiff is informed and believes, and thereon alleges that Defendants David Finan and Jennifer Gottschalk were managing or controlling members or principals of Defendant EIV at the time EIV committed the tortious acts above-referenced, and further that agents of Defendant EIV and/or David Finan and/or Jennifer Gottschalk committed these tortious acts themselves and/or caused Defendant EIV to commit these tortious acts.

53. As a proximate result of the acts of Defendants, Plaintiff lost the opportunity for economic opportunities with customers, lost multiple job offers after the prospective employer contacted defendants, was forced to spend money on attorney's fees and costs, and have been damaged in an amount to be proven at the time of trial.

54. Defendants' wrongful acts will continue to cause injury to Plaintiff unless enjoined and restrained by this Court. Plaintiff is entitled, pursuant to the Court's equitable powers, to an injunction restraining Defendants, their officers, agents and employees, and all persons acting in concert with them, from engaging in any further wrongful interference with Plaintiff's economic relationships.

55. As a proximate result of defendants' willful, knowing, and intentional misconduct, Plaintiff has suffered and continues to suffer humiliation, emotional distress, and physical and mental pain and anguish, all to her damage in a sum according to proof.

56. Plaintiff has incurred and continues to incur legal expenses and attorneys' fees. Pursuant to Government Code section 12965(b), Plaintiff is entitled to recover reasonable attorneys' fees and costs (including expert costs) in an amount according to proof.

57. Plaintiff is informed and believes that the aforementioned acts of the Defendants, Does 1 through 20, and each of them, were fraudulent, malicious and oppressive and constitute despicable conduct designed solely to benefit Defendants' own interests and improper purposes and in conscious disregard of Plaintiff's rights. Plaintiff is therefore entitled to punitive and exemplary damages under California Civil Code Section 3294.

## THIRD CAUSE OF ACTION

### Discrimination Based on Disability

### (Violation of Government Code § 12900, *et seq.*)

### Against Defendants; and Does 1 to 20, Inclusive

58. The allegations set forth in preceding paragraphs are re-alleged and incorporated herein by reference.

59. At all times herein mentioned, FEHA, Government Code section 12940, *et seq.*, was in full force and effect and was binding on defendants. This statute requires defendants to refrain harassing employees, applicants, unpaid interns, and volunteer because of their physical or mental disability medical condition or genetic information, or otherwise engaging in activity protected by the FEHA, including for seeking to exercise rights guaranteed under FEHA and/or assisting and/or participating in an investigation, opposing defendants' failure to provide rights, including rights to complain and to assist in a lawsuit, and/or the right to be free of retaliation, in violation of Government Code section 12940(h).

60. Plaintiff is seeking to exercise rights guaranteed under FEHA and/or opposing defendants' failure to provide such rights, including the right to be free of discrimination, harassment, or retaliation, in violation of Government Code section 12940(h), were substantial motivating reasons in defendants' decision to terminate Plaintiff's employment, not to retain, hire, or otherwise employ Plaintiff in any position, and/or to take other adverse employment actions against Plaintiff.

61. As a proximate result of defendants' willful, knowing, and intentional retaliation against Plaintiff, Plaintiff has sustained and continues to sustain substantial losses of earnings and other employment benefits.

62. As a proximate result of defendants' willful, knowing, and intentional discrimination against Plaintiff, Plaintiff has suffered and continues to suffer humiliation, emotional distress, and mental and physical pain and anguish, all to her damage in a sum according to proof.

63. Plaintiff has incurred and continues to incur legal expenses and attorneys' fees. Pursuant to Government Code section 12965(b), Plaintiff is entitled to recover reasonable attorneys' fees and costs (including expert costs) in an amount according to proof.

64. Defendants' discrimination was committed intentionally, in a malicious, fraudulent, despicable, and/or oppressive manner, and this entitles Plaintiff to punitive damages against defendants.

## FOURTH CAUSE OF ACTION

### Negligent Supervision and Retention

### (*Doe v. Capital Cities* (1996) 50 Cal.App.4th 1038)

### Against Defendants; and Does 1 to 20, Inclusive

65. The allegations set forth in preceding paragraphs are re-alleged and incorporated herein by reference.

66. Defendants owed a duty of care to Plaintiff to retain and supervise persons who would not engage in retaliatory, harassing, or discriminatory conduct. Defendants owed a duty of care to Plaintiff not to retain managers or employees who would discriminate against, harass, or retaliate against employees for engaging in protected activities. Defendants owed a duty of care to Plaintiff to supervise their managers and employees closely to ensure that they would refrain from harassing and retaliating against Plaintiff.

67. Defendants were aware of the harmful, discriminatory, harassing, and retaliatory conduct by EIV employees, including, but not limited to, David Finan and Jennifer Gottschalk. As such, Defendants breached their duties to retain and supervise persons who would not engage in retaliatory, harassing, or discriminatory conduct by negligently retaining and supervising David Finan and Jennifer

Gottschalk. As a result, defendants caused damages to Plaintiff. As a proximate result of defendants' negligent retention and supervision of David Finan and Jennifer Gottschalk, Plaintiff has suffered and continues to suffer damages, including losses of earnings and benefits, according to proof.

### FIFTH CAUSE OF ACTION

### Intentional Infliction of Emotional Distress

### (*Hughes v. Pair* (2009) 46 Cal.4th 1035)

### Against Defendants; and Does 1 to 20, Inclusive

68. The allegations set forth in preceding paragraphs are re-alleged and incorporated herein by reference.

69. Defendants' discriminatory, harassing, and retaliatory actions against Plaintiff constituted extreme and outrageous misconduct and caused Plaintiff severe emotional distress. Defendants were aware that treating Plaintiff in the manner alleged above, including depriving Plaintiff of her livelihood, would devastate Plaintiff and cause her extreme hardship.

70. As a proximate result of defendants' extreme and outrageous conduct, Plaintiff has suffered and continues to suffer severe emotional distress. Plaintiff has sustained and continues to sustain substantial losses of earnings and other employment benefits as a result of being emotionally distressed.

71. As a proximate result of defendants' extreme and outrageous conduct, Plaintiff has suffered and continues to suffer humiliation, emotional distress, and mental and physical pain and anguish, all to her damage in a sum according to proof.

72. Defendants' misconduct was committed intentionally, in a malicious, fraudulent, despicable, and/or oppressive manner, and this entitles Plaintiff to punitive damages against defendants.

////
////
////
////

## SIXTH CAUSE OF ACTION

### Negligent Infliction of Emotional Distress

### Against Defendants; and Does 1 to 20, Inclusive

73. The allegations set forth in preceding paragraphs are re-alleged and incorporated herein by reference.

74. Defendants' discriminatory, harassing, and retaliatory actions against Plaintiff constituted extreme and outrageous misconduct and caused Plaintiff severe emotional distress. Defendants were aware that treating Plaintiff in the manner alleged above, including depriving Plaintiff of her livelihood, would devastate Plaintiff and cause her extreme hardship.

75. As a proximate result of defendants' extreme and outrageous conduct, Plaintiff has suffered and continues to suffer severe emotional distress. Plaintiff has sustained and continues to sustain substantial losses of earnings and other employment benefits as a result of being emotionally distressed.

76. As a proximate result of defendants' extreme and outrageous conduct, Plaintiff has suffered and continues to suffer humiliation, emotional distress, and mental and physical pain and anguish, all to her damage in a sum according to proof.

77. Defendants' misconduct was committed intentionally, in a malicious, fraudulent, despicable, and/or oppressive manner, and this entitles Plaintiff to punitive damages against defendants.

## SEVENTH CAUSE OF ACTION

### Breach of Express Oral Contract Not to Terminate Employment Without Good Cause

### (*Marvin v. Marvin* (1976) 18 Cal.3d 660)

### Against Defendants; and Does 1 to 20, Inclusive

78. The allegations set forth in preceding paragraphs are re-alleged and incorporated herein by reference.

79. Defendants, through their agents, entered an oral agreement not to terminate Plaintiff's employment except for good cause. Plaintiff and defendants, through their supervisors, made mutual promises of consideration pur

80. suant to this oral agreement. Plaintiff performed all duties required of her under the agreement by performing her job in an exemplary manner.

81. Defendants and their managers and supervisors terminated Plaintiff's employment without good cause, violating the express oral contract they had with her.

### EIGHTH CAUSE OF ACTION

**Breach of Implied-in-Fact Contract Not to Terminate Employment Without Good Cause**

*(Marketing West, Inc. v. Sanyo Fisher* (1992) 6 Cal.App.4th 603; Civil Code § 1622)

**Against Entity Defendants; and Does 1 to 20, Inclusive**

82. The allegations set forth in preceding paragraphs are re-alleged and incorporated herein by reference.

83. On the basis of oral assurances of continued employment given to Plaintiff by defendants' supervisors, the length of Plaintiff's employment with defendants, defendants' actual practice of terminating employment only for cause, and the industry standard for the business defendants engaged in of terminating employment only for cause, Plaintiff and defendants shared the actual understanding that Plaintiff's employment could and would be terminated only for cause. This shared understanding resulted in an implied contract requiring that defendants have good cause to terminate Plaintiff's employment.

84. Entity Defendants and their managers and supervisors terminated Plaintiff's employment without good cause, violating the implied-in-fact contract they had with her.

85. As a proximate result of Entity Defendants' willful breach of the implied-in-fact contract not to terminate employment without good cause, Plaintiff has suffered and continues to suffer damages, including losses of earnings and benefits, in a sum according to proof.

////

////

## NINTH CAUSE OF ACTION

### Defamation

### Against Defendants; and Does 1 to 20, Inclusive

86. The allegations set forth in preceding paragraphs are re-alleged and incorporated herein by reference.

87. Defendants made false and defamatory statements about Plaintiff when contacted by prospective future employers of Plaintiff. These statements and writings were defamatory on their face, imputing professional incompetence, disparaging Plaintiffs' character and integrity, and imputing business misconduct which were unprivileged and had a natural tendency to injure or cause special damages.

88. As a direct and proximate result of Defendant's defamatory statements, Plaintiff has suffered and will suffer loss of income, loss of profits, and damage to her character and reputation in an amount to be proven at trial.

89. Plaintiff is also entitled to injunctive relief against Defendants, prohibiting them from so conducting themselves in the future.

90. Based on the foregoing, Defendant acted with malice in that their conduct was intended to cause injury and/or the conduct was carried out with willful and conscious disregard for the rights and safety of Plaintiff and was oppressive, despicable, conduct that subject plaintiff to cruel and unjust hardship in conscious disregard of Plaintiff's rights. Therefore, Plaintiff is seeking an award for punitive damages, in addition to general and special damages to deter Defendants' future misconduct.

### PRAYER

WHEREFORE, Plaintiff, Julie Szlakowski, prays for judgment against defendants as follows:

1. For general and special damages according to proof;

2. For exemplary damages, according to proof;

3. For pre-judgment and post-judgment interest on all damages awarded;

4. For reasonable attorneys' fees;

5. For costs of suit incurred;

6. For declaratory and injunctive relief:

7. For such other and further relief as the Court may deem just and proper;

ADDITIONALLY, Plaintiff, Julie Szlakowski, demands trial of this matter by jury. The amount demanded exceeds $25,000.00 (Government Code § 72055).

Date: February 10, 2023

Christopher A. Villasenor, Esq.
Attorney for Plaintiff
JULIA SZLAKOWSKI

---

**COMPLAINT AND DEMAND FOR JURY TRIAL**